Cite as 2023 Ark. App. 143

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CR-22-358

| | |
|---|---|
| MICHAEL FREDRICK STRANGE<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | Opinion Delivered March 8, 2023<br><br>APPEAL FROM THE BAXTER COUNTY CIRCUIT COURT<br>[NO. 03CR-20-37]<br><br>HONORABLE JOHN R. PUTMAN, JUDGE<br><br>AFFIRMED |

**WAYMOND M. BROWN, Judge**

A Baxter County jury convicted appellant Michael Strange of possession of a controlled substance, methamphetamine; fleeing; reckless driving; and shoplifting. Appellant was sentenced to an aggregate term of ninety months' imprisonment. He argues on appeal that the evidence was insufficient to support his possession conviction. We affirm.

Appellant's jury trial was held December 8–9, 2021. Officer Ryan Thompson of the Mountain Home Police Department testified that he came in contact with appellant on January 17, 2020, while on patrol. He stated that around 12:48 a.m., he passed appellant, who was driving a black Toyota, on Highway 62. He said that he turned around to observe appellant's driving since he had been working DWI enforcement that night. He testified that once behind appellant, he noticed that the license-plate sticker was expired, so he

attempted to initiate a traffic stop on the vehicle. Initially, appellant did not slow down or speed up, but he eventually turned on his emergency flashers and accelerated at a high rate of speed, driving between eighty and one hundred miles an hour. Officer Thompson stated that, due to the high speed, his sergeant at the time, Jonathan Griffin, told him to go ahead and terminate the pursuit. He said that he subsequently lost sight of the vehicle. However, he testified that he continued to look for the vehicle. Officer Thompson stated that the tag number showed the last name of the owner as Strange, but he could not remember whether it was appellant's or appellant's dad's name. He said that appellant had been linked to the vehicle from a previous stop. He testified that he actually "laid eyes" on appellant after appellant got into another pursuit with another officer, who was able to apprehend appellant at his parents' house located at 483 Marquis Drive. He admitted that it was too dark for him to see whether appellant had been driving the vehicle when he pursued it. He stated that when he arrived on Marquis Drive, appellant was already handcuffed. Officer Thompson testified that appellant was placed in the back of his patrol vehicle. He said that a search of appellant's vehicle revealed 0.42 grams of suspected crystal meth. He stated that he did not find the suspected drugs, but Officer Robert Recktenwald found it somewhere in the passenger's side of the vehicle and handed it to him. He said that he logged the suspected drugs into evidence. He testified that he has been an officer since 2015 and denied ever planting contraband or being accused of such. He also denied knowing that Officer Recktenwald or any of the other officers on the scene had ever been accused or under suspicion of planting contraband.

On cross-examination, Officer Thompson testified that he did not see who was driving the vehicle when he lost sight of it after he terminated the chase and that when he arrived on Marquis Drive, appellant was already handcuffed and under arrest.

Officer Griffin of the Gassville Police Department testified that he was a sergeant for the Mountain Home Police Department at the time in question. He stated that he believes Officer Recktenwald is truthful and not the type to plant evidence to get a conviction. He denied ever working with an officer who planted evidence. He said that he does not believe Officer Recktenwald made up finding the suspected drugs in appellant's vehicle. He testified that he instructed Officer Thompson to terminate the pursuit due to the dangerous speeds. He stated that although the pursuit was terminated, officers were looking for the vehicle. He said that he arrived on the scene as appellant was being placed under arrest. However, he stated that he was not there when the suspected drugs were found. He testified that all the officers wear body cameras, but "the system kicks out stuff. It can only hold so much . . . and then it purges out the rest."

On cross-examination, Officer Griffin testified that he performed a search of the passenger's side of the vehicle and did not find anything.

Officer Tyler Politte of the Mountain Home Police Department testified that he arrived at the Marquis Drive address and subsequently turned on his body camera. He denied that any officer on the scene would have planted drugs in appellant's car. He said that he was standing behind Officer Recktenwald when Officer Recktenwald found the suspected drugs. He stated that it was his understanding that the suspected drugs were

3

"pulled up from between the passenger seat and the center console." He said that they continue to do a thorough check of the vehicle because "they try to hide stuff . . . when they disappear like that."

On cross-examination, Officer Politte testified that he arrived on the scene when appellant was being walked to the patrol car. He said that he turned on his camera as he was walking to appellant's car.

Megan Peters with the Arkansas State Crime Laboratory testified that she tested the evidence in this case for the presence of controlled substances. She stated that she performed three tests: a spot test, a thin layer chromatography, and a gas chromatography-mass spectrometry. She said that the evidence was an adequate size to test. She stated that the sample contained methamphetamine and that it weighed 0.1418 grams. She testified that the amount tested was weighable and detectable. Her report was entered into evidence without objection.

On cross-examination, Peters testified that she did not perform a quantitative test to determine what percentage of the evidence was actually methamphetamine. However, she stated that she took three separate aliquots of the evidence, and each one showed the presence of methamphetamine.

Officer Recktenwald of the Mountain Home Police Department testified that he has never planted evidence on anyone. He stated that on January 17, 2020, he was part of the pursuit that had gotten called off. He said that he subsequently drove to the Mower Warehouse and faced the highway. He testified that around 1:00 a.m., he noticed a vehicle

that matched the description of the fleeing vehicle and saw appellant driving it.  He stated that he and Officer Rodney Wiggins got behind the vehicle, and he tried to initiate a stop on the vehicle, but appellant continued to drive home.  He said that once home, appellant exited the driver's side of the vehicle and attempted to go into the house.  He testified that appellant was ordered to stop and was subsequently placed under arrest.  He said that he participated in the search of appellant's vehicle and found a plastic baggie containing methamphetamine between the passenger seat and the center console.  He stated that as he was following appellant, he was able to see appellant reach toward the passenger side of the vehicle.  He said that he even made notification on the radio that appellant was reaching on the passenger side.  Officer Recktenwald testified that his blue lights could light up the inside of a vehicle.  He also stated that he was in a well-lit area when he saw appellant.  He denied that he or any other officer on the scene planted the methamphetamine in appellant's vehicle.

On cross-examination, Officer Recktenwald testified that he was the officer who put handcuffs on appellant.  He said that he is the officer who found the methamphetamine. He admitted that he did not have on his body camera that night.  He agreed that it did not take him long to locate the methamphetamine in the vehicle.

Sergeant Wiggins of the Mountain Home Police Department testified that he saw appellant get out of the driver's side of the vehicle on the night in question.  He stated that he and Officer Recktenwald followed appellant for less than a minute.  He said that appellant

had a backpack that he was trying to hand off to his father. He stated that Officer Recktenwald found the methamphetamine.

On cross-examination, Sergeant Wiggins stated that he did not remember searching the vehicle. He said that appellant did not run when he got out of the vehicle, but he did appear to be "in a very fast pace." He testified that there was a camera in the backpack appellant tried to hand to his father.[1]

After the State rested, appellant unsuccessfully moved for a directed verdict for the charges against him. The defense rested without putting on any evidence. The directed-verdict motions were renewed, and as it relates to the issue on appeal, appellant argued that the State had not "met the burden of prima facie case to prove that [appellant] was in control of any methamphetamine or had knowledge that any methamphetamine was in his car or possession or that it was a usable or measurable amount." The circuit court denied the motion. The jury found appellant guilty and sentenced him to ninety months' imprisonment on the possession-of-methamphetamine charge. The other charges were to run concurrently to this sentence. The sentencing order was filed on December 14, 2021. Appellant filed a timely notice of appeal on January 9, 2022.

On appeal, we review a motion for a directed verdict as a challenge to the sufficiency of the evidence and will affirm the circuit court's denial of a directed-verdict motion if there

---

[1]The camera was the subject of the shoplifting conviction, which is not on appeal.

is substantial evidence, either direct or circumstantial, to support the jury's verdict.[2] Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture.[3] In reviewing the sufficiency of the evidence, we view the evidence and all reasonable inferences in the light most favorable to the State and affirm if it is supported by substantial evidence.[4]

Appellant contends that the circuit court erred by denying his directed-verdict motion for the possession-of-methamphetamine charge. More specifically, he contends that the State failed to prove that he had knowledge of the methamphetamine or that the amount of methamphetamine found was usable.

When arguing that the State failed to prove that he had knowledge of the methamphetamine, appellant points to the fact that at least one other officer searched that area of the vehicle before Officer Recktenwald found the baggie of methamphetamine. He also argues that the amount was so small that he was unaware it was there. The evidence viewed in the light most favorable to the State shows that appellant failed to stop when Officer Thompson tried to initiate a traffic stop on him, and instead accelerated to high rates of speed, causing the pursuit to be terminated. Officer Recktenwald subsequently spotted the vehicle involved in the chase and recognized appellant driving the vehicle. He, too, tried to stop appellant, but instead of stopping, appellant pulled into his driveway and attempted

---

[2]*Martin v. State*, 2021 Ark. App. 358, 630 S.W.3d 607.

[3]*Id.*
[4]*Id.*

to go into the house. Appellant was stopped, handcuffed, and placed under arrest. Officer Recktenwald testified that as he was following appellant, he could see appellant reaching toward the passenger side of the vehicle. Thus, when Officer Recktenwald searched the vehicle, he was able to locate a baggie that contained methamphetamine in the area appellant had been reaching. It was up to the jury to determine whether appellant's actions showed knowledge of the methamphetamine, and the circuit court properly denied appellant's directed-verdict motion on the basis of his knowledge. To the extent that appellant asks us to reweigh the evidence in his favor, we will not do so.

Appellant also argues that the State failed to show that methamphetamine was a usable amount. The measurable amount of methamphetamine for the purpose of inferring intent includes the amount of pure drug plus all adulterants.[5] We have held that the State must prove that the accused possessed an amount of a controlled substance that is either sufficient to permit knowledge of its presence without the need for scientific testing or sufficient to be usable in the manner in which such a substance is ordinarily used.[6] Peters testified that the drugs submitted to the crime lab were both weighable and detectable. She said that she was able to perform three separate tests on the evidence, and all three were positive for methamphetamine. Appellant argues that since there was no testimony that 0.1418 grams of methamphetamine is a usable amount, the State failed to meet its burden.

---

[5] *Kolb v. State*, 2021 Ark. 58.

[6] *Id.*

However, it does not matter that no one testified that 0.1418 grams is a usable amount of methamphetamine or that at least one other officer missed it during the search. We have held that 0.024 grams of cocaine was usable because it was capable of quantitative analysis, could be seen with the naked eye, was tangible and could be picked up, and was a measurable amount.[7] The same holds true for the methamphetamine in this case. Furthermore, the jury was free to believe or disbelieve that the amount was usable, and the circuit court properly denied appellant's directed-verdict motion based on usable amount.

Affirmed.

THYER and WOOD, JJ., agree.

*Dusti Standridge*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.

---

[7]*See Sinks v. State*, 44 Ark. App. 1, 864 S.W.3d 879 (1993).